# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2023

Lyle W. Cayce
Clerk

No. 22-20144

Morgan Grice,

*Plaintiff—Appellant*,

*versus*

Travis Younger; City of Bellaire; Bellaire Police
Department; Byron Holloway; Onesimo Lopez; Andrew
S. Friedberg; Paul A. Hoffman; Police Officer John Doe,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-2295

Before Clement, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:*

Morgan Grice asks us to reverse the district court's judgment on her 42 U.S.C. § 1983 and state tort claims against Officer Younger and her municipal liability claims against the City of Bellaire. Instead, we affirm.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20144

## I.

On August 18, 2017, Bellaire police officer Travis Younger arrived at the scene of a traffic accident along Texas's IH-610.[1] Morgan Grice (the appellant) had rear ended another driver and badly smashed the front of her Subaru hatchback. Grice spoke to Officer Younger with slurred speech and her eyelids drooped. Officer Younger asked Grice several times how much she'd had to drink; she repeatedly said she'd had nothing. Eventually, Grice admitted to drinking at a work happy hour earlier that day. She also said she was on her way to pick up her child. Inside her car, Officer Younger found ten empty Miller Lite beer cans, four empty and five unopened Modelo beer cans, one empty Coors Lite beer can, and an empty bottle of Chateau Souverain Sauvignon Blanc. He conducted three field sobriety tests on Grice, which she failed. So Officer Younger arrested Grice under suspicion of driving while intoxicated and took her to jail.

At the jail, Grice consented to a blood test both orally and in writing. Officer Younger cuffed Grice again and drove her to the nearby Bellaire fire station to allow an EMT to take a blood sample. After they entered the fire station, Officer Younger removed Grice's handcuffs, and they climbed into the back of an ambulance to join the EMT. After the EMT took additional information from Grice and began preparing to draw her blood, Grice asked Officer Younger if he would do the test himself. In response, Officer Younger again explained to her in a level tone what was happening: Grice had consented to a blood draw so the EMT was taking her blood to determine the level of alcohol in her system. He also told her that if she didn't consent, he would get a warrant, and then they would take her blood anyway. In response,

---

[1] The entire encounter is captured on one hour and sixteen minutes of video footage from Officer Younger's body camera.

No. 22-20144

Grice said Officer Younger was being "a jerk," asked him if he had ever seen *My Cousin Vinny*, and then withdrew her consent to the blood draw.

Officer Younger told the EMT they would have to come back because Grice was being "difficult." He asked Grice to step outside the ambulance, but she refused to comply. Officer Younger told her that if she refused to exit he would "pull her out." She then got out and called Officer Younger a name. Officer Younger told her she was a "drunk driver," turned her around forcibly, and began attempting to handcuff her.

Before Officer Younger could secure the handcuffs, Grice spun to her left with her chest toward Officer Younger and said "do it harder." He then pushed her against the side of the ambulance and kept trying to cuff her.[2] He repeatedly told Grice to "stop resisting," "to put her hands behind her back," and to not "pull away again." He asked her repeatedly if she understood his command not to "pull away again." He then told her that he would put her "on the ground" if she kept resisting. She said "do it again you fucking [inaudible]." Officer Younger said over his radio that Grice was "resisting." After she squirmed and fidgeted her arm again, Officer Younger grabbed her arm and pressed her once again against the ambulance; he told her again not to pull away. He then took out his handcuffs and attempted to cuff her again.

At this point, Grice turned to her left and pulled away again. In response, Officer Younger took her to the ground and then cuffed her. During the takedown, Grice hit her head against the concrete. It's clear from the video that the left side of her face immediately began to swell and bruise.

---

[2] Officer Younger's body camera fell off when he pushed Grice against the ambulance. Within seconds, an EMT picked it up and kept filming the incident.

No. 22-20144

After a warrant issued, Grice's blood was eventually drawn. Tests indicated that Grice had a blood alcohol concentration of more than three times the presumptive level of intoxication. Grice was convicted of driving while intoxicated.

Grice sued Officer Younger, the City of Bellaire, and a variety of other City-related defendants under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment, intentional infliction of emotional distress ("IIED"), and other claims. The district court first dismissed all Grice's claims except her excessive force and IIED claims against Officer Younger, and later granted summary judgment to Officer Younger on those claims. Grice appeals only as to her excessive force and IIED claims against Officer Younger and her claims against the City.

## II.

We review the district court's grant of summary judgment and its grant of a motion to dismiss *de novo* using the same standards as the district court. *See Howell v. Town of Ball*, 827 F.3d 515, 521–22 (5th Cir. 2016).

We first (A) explain why Officer Younger is entitled to qualified immunity on Grice's Fourth Amendment claim. We next (B) explain why Grice's other claims on appeal fail too.

## A.

Officer Younger is entitled to qualified immunity unless he violated a constitutional right (prong one) that was clearly established at the time of the challenged conduct (prong two). *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts may address either prong first).

Even assuming Officer Younger violated Grice's Fourth Amendment rights, she must demonstrate that "the violated constitutional right was

clearly established." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 417 (5th Cir. 2009). She can do that in one of two ways.

First, Grice can win by pointing to binding precedent that places "the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *ibid.*, governing precedent "must be clear enough that every reasonable official would interpret it to establish the particular rule." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). That means the legal principle must "clearly prohibit the officer's conduct in the *particular circumstances* before him." *Ibid.* (emphasis added); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (instructing courts not to define clearly established law at a "high level of generality"); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (same). In the Fourth Amendment context, the Supreme Court has recognized that specificity is "especially important" due to the highly specific nature of each factual situation. *Mullenix*, 577 U.S. at 12; *Kisela*, 138 S. Ct. at 1152–53; *Wesby*, 138 S. Ct. at 590. And within the Fourth Amendment context, the Supreme Court has particularly marked out excessive force as "an area of law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quotation omitted).

Assuming circuit cases can clearly establish the law (something the Supreme Court has never said), only one of the published cases Grice cites is even in the factual ballpark. *See Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019) (unpublished cases can't clearly establish the law). That's *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) (per curiam). There, an officer

stopped a woman and her grandchild for a minor traffic violation. *Id.* at 161. The officer ordered the woman to step out of the car, but she refused because she didn't want to leave her grandchild alone. *Ibid.* After another officer arrived, both officers broke the driver's side window of the car, dragged the woman out of the car, and threw her against the side of their police car causing injury to her abdomen. *Id.* at 162. Unlike in *Deville* where the grandmother was at most *passively* resisting and not complying with the officers' commands, it's perfectly clear from the video in this case that Grice was not only passively noncompliant with Officer Younger's commands—she was *actively* physically resisting his attempts to handcuff her. And the minor traffic offense at issue in *Deville* is miles away from Grice's much more serious offense of driving while intoxicated at three times the legal limit.

Grice's other cases are also readily distinguishable. In *Ramirez v. Martinez*, an officer tased an arrestee a second time *after* the arrestee was already handcuffed. 716 F.3d 369, 378 (5th Cir. 2013). But here, Grice was repeatedly, physically resisting Officer Younger's attempts to handcuff her when he took her to the ground. And in *Newman v. Guedry*, the officer gave no commands and no warning before using force. 703 F.3d 757, 763 (5th Cir. 2012). That's not the case here because Officer Younger repeatedly gave Grice commands she ignored and repeatedly warned her about the consequences of continued resistance before using force. Last, in *Goodson v. City of Corpus Christi*, the officers used excessive force on a pedestrian after conducting a stop and frisk without reasonable suspicion. 202 F.3d 730, 740 (5th Cir. 2000). Here, Officer Younger arrested Grice on suspicion of driving while intoxicated after (1) she failed three field sobriety tests, (2) she appeared intoxicated, and (3) he found fifteen empty beer cans and an empty wine bottle in her car. None of the cases Grice cites "squarely govern" the facts at issue here.

Even though Grice can't identify an on-point case, she can also win if

she can show this is the "rare obvious case." *Wesby*, 138 S. Ct. at 590 (quotation omitted). That's a case "where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id.* While the obvious case exception isn't a nullity, "a body of relevant case law is usually necessary to clearly establish the answer." *Id.* (quotation omitted).

But this case isn't close to the obvious case. Here, Officer Younger used increasing levels of force as Grice continued to resist and disobey his commands. He physically turned her around, pushed her against the side of the ambulance, and grabbed her arm as she swung it sideways all in an attempt to handcuff her. He told her he would "put her on the ground" if she kept resisting and pulling away. When she pulled away again, Officer Younger took her to the ground as he had warned her he would. Because every reasonable official in Officer Younger's shoes wouldn't think it obvious that taking a noncompliant, physically resistant suspect to the ground (after trying multiple lesser measures) violates the Constitution, Officer Younger is entitled to qualified immunity.

## B.

Grice's other claims fail too. Officer Younger is statutorily immune from Grice's IIED claim against him under the Texas Tort Claims Act ("TTCA"). That's because "a plaintiff who sues under the TTCA must elect pursuant to § 101.106 of that act *between* suing a governmental unit and suing an employee of that unit." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010) (emphasis added). Where a plaintiff "sues both the governmental unit and any of its employees under the TTCA, 'the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'" *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 101.106(e)); *accord Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 223

(5th Cir. 2018). Here, the express language in Grice's Amended Complaint clearly indicates that Grice brought Texas tort claims against both the City and Officer Younger. Thus, her IIED claim against Officer Younger is barred by the TTCA.

Finally, Grice's various municipal liability claims against the City under § 1983 also fail because she has pled no specific facts to support them. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001) (noting that courts must "adhere to [the] rigorous requirements of culpability and causation" when evaluating municipal liability claims lest municipal liability "collapse[] into respondeat superior liability" (quotation omitted)). We ascertain no constitutional violation from Grice's rote recitation of the municipal liability elements in the absence of specific facts indicating culpability and causation.

AFFIRMED.